# Virginia Bussier, Appellant, v. Harry Weekey et al.

*Jurisdiction. equity—Restraint of trespass.*

Under the Act of June 16, 1836, P. L. 784, the court has undoubted power to restrain the commission of trespasses where the remedy at law will be inadequate. If the trespass is fugitive and temporary then adequate compensation can be obtained by action at law. and there is no ground to justify the interposition of a court of equity. If, on the other hand, trespasses are constantly recurring and threatening to continue, or if the threatened trespass contemplates a permanent occupation and use of the plaintiff's property, the rule is different and the jurisdiction is sustained.

*Practice, equity—Pleading—Demurrer.*

A demurrer necessarily admits the truth of the facts stated in the bill, so far as they are relevant and well pleaded; but it does not admit the conclusions of law drawn therefrom, although they are also alleged in the bill.

*Jurisdiction, equity—Restraint of trespass.*

Where the facts in the case are undisputed and establish a clear and legal right to land in controversy, the court has jurisdiction to restrain the commission of a trespass which threatens a permanent invasion of the premises.

Argued Oct. 8, 1896.   Appeal, No. 64, Nov. T., 1896, by plaintiff, from decree of C. P. No. 1, Phila. Co., Sept. T., 1895, No. 131, dismissing plaintiff's bill.   Before RICE, P. J., WILLARD, WICKHAM, BEAVER, REEDER, ORLADY and SMITH, JJ. Reversed.

Bill to restrain trespass on real estate and demurrer thereto. Before BIDDLE, P. J.

The facts are disclosed from the following abstract of bill and demurrer :

The bill sets forth that the plaintiff, a widow, is owner in fee of premises 240 Harvey street, Germantown, Philadelphia ; that she has owned and occupied them continuously for about twenty-eight years, keeping all the fences and other boundary marks during that time on precisely the same lines as at the inception of her title, without variation ; that the fence on the northeast side of her property is about eleven inches further northeast than her deed originally called for, but that by her open, notorious, continuous and adverse occupancy of the said strip as part of her premises during all the twenty-eight years, she has acquired a good and indefeasible title thereto ; that certain of the defendants, to wit, Harry Weekey, Francis C. Dade, Jr., and Walter Noble, have forcibly and unlawfully moved part of the said northeast fence back upon her ground, and also have partly rebuilt the same, without regard to her title or to the acts of assembly regulating the renewal of line fences in Philadelphia, and in so doing have also partly broken down part of the stone walls at the front and back of her property and committed other damage, and that they threaten to further trespass upon and move the remaining part of the said fence ; also that since committing the acts complained of, said Weekey, Dade, and Noble have sold adjoining premises to the other three codefendants.

The prayer of the bill was that defendants be decreed to restore the fence so moved back to its original location; to restore the walls or parts thereof destroyed; and to be enjoined from further interference with property of plaintiff.

To this bill the defendants filed no answer, but demurred, alleging :

1. Adequate remedy at law.

2. That this is an ejectment bill.

3. That it attempts to regain possession of land now in certain of the defendants.

4. That it attempts to regain possession of land to which plaintiff has no title.

5. That plaintiff's right has not been established at law.

6. Improper joinder of Lewis Frech, Cebert H. Newhall and John Wesley Durnell as codefendants.

*Errors assigned* were (1) in not overruling defendants' demurrer; (2) in not entering decree for plaintiff as prayed for in bill; (3) in sustaining demurrer; (4) dismissing plaintiff's bill.

*Edwin F. Schively*, for appellant.

*Alex. Simpson, Jr.*, for appellees.

OPINION BY RICE, P. J., March 17, 1897:

By the act of June 16, 1836, extended throughout the commonwealth by the act of 1851, the courts of common pleas are given the power and jurisdiction of courts of chancery, so far as relates to the prevention or restraint of the commission or continuance of acts contrary to law and prejudicial to the interests of the community or the rights of individuals. Under this section the court has undoubted power to restrain the commission of trespasses where the remedy at law would be inadequate. If the trespass is fugitive and temporary, then adequate compensation can be obtained by an action at law, and there is no ground to justify the interposition of a court of equity. If, on the other hand, the trespasses are constantly recurring and threaten to continue, or if "the threatened trespass contemplates a permanent occupation and use of the plaintiff's property, the rule is different and the jurisdiction sustained; for such an injury is not reparable by an action for damages, besides that it would require to be followed up by successive actions. This is a well recognized distinction:" Masson's Appeal, 70 Pa. 26; Biddle v. Ash, 2 Ashm. 211, 221; Stewart's Appeal, 56 Pa. 413; Allison's Appeal, 77 Pa. 221; Bitting's Appeal, 105 Pa. 517; Ferguson's Appeal, 117 Pa. 426; Walters v. McElroy, 151 Pa. 549. We remark, in passing, that in none

of these cases was the plaintiff's title first established by an action at law. It is equally well settled that a bill in equity will not lie simply to recover possession of land, because, for this there is a complete remedy at common law, by ejectment. Such bills are demurrable. The Acts of April 15, 1858, P. L. 267, and April 5, 1859, P. L. 359, conferring special jurisdiction upon the courts of common pleas of Philadelphia county, in cases of disputed boundaries, do not affect this question. These acts do not confer jurisdiction to determine merely legal rights ; to confer jurisdiction, some equity must be superinduced by the acts of the parties : Norris's Appeal, 64 Pa. 275 ; Tillmes v. Marsh, 67 Pa. 507. If, therefore, as the learned judge says, the plaintiff is "admittedly out of possession" of the land in controversy, he was clearly right in dismissing the bill upon the ground that she has an adequate remedy at law. But we do not think the bill admits, either directly or by necessary inference, that the plaintiff is out of possession. On the contrary, she expressly avers that the defendants have moved part of her boundary fence and thus taken part of her land, and threaten "to commit a similar trespass and move and rebuild in a similar way the rest of the said fence." As to the land not taken possession of by the defendants, the bill presents a case where, to repeat the language of Mr. Justice SHARSWOOD, "the threatened trespass contemplates a permanent occupation and use of the plaintiff's property." This averment is sufficient to give the court jurisdiction, even if the plaintiff is not entitled to equitable relief for the past injury.

The other ground upon which the learned judge bases his decree, is, that the plaintiff's title, as set forth in the bill, is not an indefeasible title derived from the commonwealth, but necessarily a disputable title obtained by adverse possession. A demurrer necessarily admits the truth of the facts stated in the bill, so far as they are relevant and are well pleaded ; but it does not admit the conclusions of law drawn therefrom, although they are also alleged in the bill : Story's Eq. Pl., § 452. Such being the effect of the demurrer, the facts taken to be admitted are, that the plaintiff had been in the open, notorious, exclusive, continuous, and adverse possession of the strip of land in question, for a period of twenty-eight years. These facts made for her a perfect title against all the world except the commonwealth,

and a title which no mere trespasser could gainsay. The effect of the statute, said Chief Justice GIBSON, is to transfer to the occupant the title against which it has run: Graffius v. Tottenham, 1 W. & S. 488, 494. The right of possession is acquired by twenty-one years' possession, and this right is not only sufficient to support a defense, but it is a positive title, under which one may recover as plaintiff in ejectment: Pederick v. Searle, 5 S. & R. 236. "The common-law distinction between the right of possession and the right of property, as elements of title, is very much disregarded by us, and, so far as concerns the operation of the statute of limitations, is altogether lost sight of. Hence we have numerous cases in our books, in which titles under the statute are spoken of as titles against all the world— as indefeasible—as equally perfect with any known to the law— as title against the true owner—as capable of being lost only by grant or adverse possession, and not by neglect—as a perfect title even against a bona fide purchaser, without notice:" Chief Justice WOODWARD, in Schall v. The Williams Valley R. R. Co., 35 Pa. 191, 205. It is unnecessary to multiply authorities to show that a title by adverse possession is as good as any other, and that its owner is equally entitled to protection in a court of law. Why should he not be entitled to the same protection in a court of equity? It is answered, because such title is disputable and dependent upon oral evidence. The cases show that if the facts upon which the title is based are in dispute, a court of equity may, and generally will, refuse to interfere, further than to preserve the status quo, until the right can be established at law; but no case has been called to our attention in which it has been held that, because the title is of a kind which may be disputed, equity will not take jurisdiction. Washburn's Appeal, 105 Pa. 480, is certainly not such a case. The point decided in that case was that a court of equity has no jurisdiction to settle a disputed legal title to land, or to a right of way, on a bill in equity filed by the party in possession averring that a multiplicity of suits at law may result to redress threatened grievances. The facts were disputed by the answer and in the testimony, and the case clearly came within the rule as stated in Rhea v. Forsyth, 37 Pa. 503, and restated in Mowday v. Moore, 133 Pa. 598. "Where the plaintiff's right," says WOODWARD, J., "has not been established at law, or is not

clear, but is questioned . . . . not only by the answer of the defendant, but by proofs in the cause, he is not entitled to remedy by injunction. It is not enough that he is able to produce some evidence of his right, where there is conflicting evidence going to the denial of all right. In a case so situated the plaintiff should first establish his right in an action at law, and then come into chancery if necessary, for the protection of the legally established right." As the present case now stands the facts are not disputed and they establish a clear legal right, in the plaintiff, in the land in controversy. Until, at least, the defendants are able and willing to deny the facts out of which the plaintiff's title grows, they will not be in a position to insist that she shall go into a court of law to establish them before invoking the protection of a court of equity against their threatened invasion of her premises.

Whether or not she will be entitled to all the relief she prays for is a question which it would be premature to discuss at this time. It is sufficient for present purposes, to show that a court of equity has jurisdiction to the extent, at least, of protecting her against further encroachment on the property in her actual and peaceable possession.

The decree is reversed, the bill is reinstated, and it is ordered that the defendants answer over; the costs of this appeal to be paid by the appellees.