## ·Miller *v.* McGowan, Appellant.

*Waters—Diversion of waters—Trespass.*

Where a husband constructs a ditch on land, the title to which is subsequently acquired by his wife, and diverts a stream in such a way that in times of freshet, water is cast in large quantities upon land which the stream did not previously touch, and the wife after acquiring title does nothing to remedy the trouble, both husband and wife can be held liable in an action of trespass for the injuries sustained by the neighboring owner.

Argued March 7, 1905. Appeal, No. 28, March T., 1905, by defendants, from judgment of C. P. Lycoming Co., June T., 1902, No. 443, on verdict for plaintiff in case of Emma J. Miller v. M. Elizabeth McGowan and Robert McGowan. Before RICE, P. J., BEAVER, ORLADY, SMITH, PORTER, MORRISON and HENDERSON, JJ. Affirmed.

Trespass for injuries to land by the diversion of water. Before HART, P. J.

The facts are stated in the opinion of the Superior Court.

The court charged in part as follows:

[Of course, if these defendants changed an ancient water course that was upon their land, or permitted an ancient water course to remain in such condition after having been changed, as to do injury to this plaintiff, and such change was made without the consent of the parties injured, in law they would ' be liable for whatever damage such change of location of the stream would result in to the plaintiff.] [1] No person has a right to change an ancient water course upon their land in such manner as to do injury to their neighbor or to the adjoining property owner.

Verdict and judgment for plaintiff for $75.00. Defendant appealed.

*Errors assigned* were (1) above instruction, quoting it; (2, 3) answers to points quoted in the opinion of the Superior Court; (5) ruling on testimony referred to in the opinion of the Superior Court.

*H. W. Whitehead,* with him *J. F. Strieby,* for appellee.

*William R. Peoples,* for appellee.              •

OPINION BY BEAVER, J., October 9, 1905 :

The plaintiff complains that " The plaintiff is the owner, in fee simple, of a messuage, tenement and lot of land situate in the said borough (Jersey Shore), the same being situate on the south side of Allegheny street, in the second ward of the said borough, having a frontage of twenty-six (26) feet on said street·and a depth of two hundred and eight (208) feet and adjoining lands of the said defendants.

" That from time immemorial up to the time of committing the grievances, hereinafter stated, there flowed through the said lands of the said defendants a certain stream of water, now known as Lawshe's Run, the natural bed or water course thereof being upwards of three hundred (300) feet distant from the boundary line of the land of the said plaintiff.

" That, on or about the fifteenth day of June 1891, one of the said defendants, to wit : Robert McGowan, caused the course of the said Lawshe's Run to be diverted and changed, and he did then and there turn aside the said stream in such a manner as to cause the same wholly to cease to flow in its natural, or former, course, by cutting a new channel at the point where the said stream enters the land of the said defendants and extending the said channel on or near the boundary line of the lot of the said plaintiff.

" That, by reason of said change, there has been gradually cut a channel in and near the plaintiff's land, so that during the time of freshets the water, in flowing through the said channel, as made by the said McGowan, overflows the land of the said plaintiff and washes away the soil of the . same."

It will be observed that the plaintiff does not claim to be a lower riparian owner. Her complaint is not that she has been deprived of the water flowing through Lawshe's Run, but that by reason of the change in its course by the acts of the defendants she became a lateral owner upon whom, in consequence of the change and its maintenance, the water of the stream which, in its natural and usual course, was 300 feet away from

her lot, was brought so near as to be thrown, at least occasionally, upon her premises, which were thereby injured.

1. In this view of the case, the portion of the charge of the court complained of in the first assignment of error is entirely correct. The case of Schlag v. Jones, 131 Pa. 62, does not apply. Whilst it is true that it is there said : " Whether the water shall follow its original bed is not for them to say, for they have no interest in the original bed, and no rights over it as riparian owners. " This would be true as to this plaintiff, if there had been no actual damage done to her property by reason of the change, but the court goes on to say, referring to the plaintiffs in that case : " They have a right to insist that it (the water) shall not be thrown upon them, and to treat the act of him or them by whom it is so thrown as a trespass." See also Rhoads v. Davidheiser, 133 Pa. 226.

2. The second assignment of error relates to the refusal of the court to affirm defendants' fifth (erroneously called by the appellants the eighth) point for charge, which was : " Fifth. If the jury find from the evidence that the channel or bed of Lawshe's Run below the land of defendants was too small to carry off the volume of water that fell in times of heavy rains, and that this was the cause of the overflow that damaged the plaintiff, then their verdict must be in favor of the defendants." The ground for the refusal of this point is not far to seek. If the defendants had alleged that the insufficiency of Lawshe's Run below the land of the defendants to carry off the volume of water that fell in times of heavy rains was the sole and exclusive cause of the overflow that damaged the plaintiff, they might have asked an affirmative answer, with some degree of plausibility. They, however, not only did not allege that but, if they had so alleged in their point, it would not have been sustained by the evidence. The most that can be said is that the filling up of the run below the lands of the defendants may have been one of the causes which tended to the plaintiff's hurt. The water, coming into the ancient bed of the run below, was shed from the channel made by the defendants, or one of them, which is complained of, and, inasmuch as the defendants had no right, as alleged by the plaintiff, to turn the water into this channel, their co-operation, admitting that it was mere co-operation, in bringing about the damage which resulted

from the floods, renders them liable. From no point of view from which we can look at the evidence, were the defendants entitled to an affirmance of this point.

3. The third specification of error relates to the refusal of the court to affirm defendants' eighth point for charge, which was as follows : "Eighth. There being no evidence in this case that M. Elizabeth McGowan, one of the defendants, either with the other defendant or separately, committed any of the torts alleged by the plaintiff or that the alleged tort or torts were committed by or with her knowledge or consent, there can be no verdict against her." This point seems to be based upon the view of the defendants that, inasmuch as Mrs. McGowan did not actively participate in the construction of the alleged new channel, she was thereby relieved from any responsibility for the tort complained of. In law as well as in morals, however, there are sins of omission as well as of commission and we may add a third class, those of permission. If the defendant permitted the water to run through a channel, to the use of which she had no prescriptive right, and thereby caused injury to her neighbor, she is responsible for her permissive acts. The doctrine of "sic utere" applies here. Inasmuch as the channel itself was dug upon the lands of the defendant, the plaintiff had no right to complain, if no evil results followed ; but when, as the result of the maintenance of this new channel, the water of usual floods overflowed its banks and injured the plaintiff, the defendant who constructed, or caused to be constructed, the channel and the owner, the other defendant, were both liable for its maintenance and the evil which resulted therefrom. The point was properly refused.

4. The bill of particulars fully justified the admission of the testimony relating to the damages sustained by reason of the washing away of the soil from plaintiff's lot, by reason of the overflow of water during 1902 and prior thereto. The appellant, in commenting upon the bill of particulars and the admission of this testimony thereunder, quotes only the concluding paragraph of the bill. Previous to this paragraph, however, it is said : " That, by reason of the said change made on or about the 15th day of June A. D. 1891 and since that date, the said defendants have wrongfully kept and maintained said artificial water course, so that during the time of the or-

dinary freshets in the spring and fall of each and every year since the date before mentioned the said defendants have caused the water of the said stream to flow over the said plaintiff's lands, thereby washing the soil off of her said lot of land and destroying its tillable qualities, so that she can no longer use the same for gardening purposes." This was quite as specific as to previous years as the part quoted by the appellants as relating to 1902.

5. It follows from what has been said that the case was entirely for the jury, for they found that the cause of the damage to plaintiff's property was not the act of God but was occasioned by the acts of the defendants. The instructions of the court were full and explicit upon this point and it would have been manifest error to take the case from the jury.

Judgment affirmed.