## Spiers v. City of New Castle

*James A. Caldwell*, for plaintiffs.

*James L. Scarazzo, Jr.*, Assistant City Solicitor, for defendants.

*Richard J. Audino, Sherman K. Levine* and *Maurice Levinson*, for amicus curiae.

LYON, J., July 23, 1970.—Before the court for determination is defendants' preliminary objection in the nature of a demurrer to the complaint initiating this mandamus action. The present issue arose on the pleadings, which consist of only a complaint and preliminary objection. In the demurrer, defendants contend that the complaint fails to state a legal cause of action.

The demurrer admits all facts averred in the complaint which are well pleaded, but not plaintiffs' conclusions or averments of law: Universal Film Exchanges, Inc. v. Board of Finance and Revenue, 409 Pa. 180, 185 A. 2d 542 (1962); Bogash v. Elkins, 405 Pa. 437, 176 A. 2d 677 (1962); Ross v. Metropolitan Life Insurance Company, 403 Pa. 135, 169 A. 2d 74 (1961); Gardner v. Allegheny County, 382 Pa. 88, 114 A. 2d 491 (1955); Narehood v. Pearson, 374 Pa. 299, 96 A. 2d 895 (1953). If there is any doubt as to whether the demurrer should be sustained, it should be resolved against

the objecting party: King v. United States Steel Corporation, 432 Pa. 140, 247 A. 2d 563 (1968); 4 Standard Pa. Pract., Chapter 13, §25.

In order to state a valid cause of action in mandamus, it must appear from the complaint, when interpreted according to the foregoing rules, that plaintiffs have an immediate, well-defined and complete legal right to be promoted to the position of lieutenant in the City of New Castle Fire Department: Purcell v. Altoona, 364 Pa. 396, 72 A. 2d 92 (1950). Any rights that remain questionable cannot be enforced by a mandamus action: Leff v. N. Kaufman's, Inc., 342 Pa. 342, 20 A. 2d 786 (1941).

Plaintiffs, Thomas J. Spiers, Jack E. Smith and Oliver E. Pirkkala, are firemen employed by the City of New Castle. Defendants are the City of New Castle, the mayor and each member of council of that municipality. The complaint recites that the three plaintiffs were among 28 persons who took the civil service promotional test for firemen given on July 25, 1968; that thereafter the civil service board, on or about September 9, 1968, ranked each person taking the written examination according to his test score, the person with the highest score being ranked first, the one with the second highest being ranked second and so on; that the report of the civil service board ranked plaintiffs as second, third and fourth; that thereafter the person who was ranked first was promoted to the position of lieutenant by the Mayor and Council of the City of New Castle, who at the same time also elevated another person, ranked seventeenth, to the same position; and that none of plaintiffs have been promoted, even though there remain vacancies in the position of lieutenant in the fire department. The complaint concludes with a demand that the mayor and council be compelled to fill the vacancies in the position of lieutenant by advancing

each of plaintiffs, individually, to that position in the Fire Department of the City of New Castle.*

Plaintiffs' claim for relief is bottomed upon the authority of McGrath v. Staisey, 433 Pa. 8, 249 A. 2d 280 (1968), which involved a mandamus action against the Allegheny County Commissioners by a patrolman who was passed over for promotion after attaining the third highest grade on the written test of the Civil Service Commission for Allegheny police and firemen. The county commissioners contended that the language of the applicable statute would merely require that the applicants pass the examination in order to demonstrate sufficient merit to be worthy of promotion and that other factors such as physical agility, personal courage and leadership qualities, could then be considered among those who passed in deciding who shall be promoted. The patrolman rebutted this argument by pointing to the clear language of the statute itself. He argued that if promotions are to be based on merit, i.e., with the most meritorious being promoted first, the merit is to be determined solely by the written examinations, as the statute explicitly prescribes, then it necessarily follows that the patrolman with the highest grade on the examination should be promoted first. Both parties agreed that the statute governing the situation provided: "Promotions shall be based on merit, to be ascertained by written examination . . . All examinations for promotions shall be practical in character and such as will fairly test the merit and fitness of the person seeking

---

*Counsel for the respective parties filed with the court a stipulation of facts which differs in some respects from those averred in the complaint. In adjudicating the demurrer we are required to ignore the stipulation and must consider only the averments of the complaint: King v. United States Steel Corporation, supra; Universal Film Exchanges, Inc. v. Board of Finance and Revenue, supra; Bogash v. Elkins, supra; Gardner v. Allegheny County, supra.

promotion": Second Class County Code, of July 28, 1953, P. L. 723, 16 PS §4516. The Pennsylvania Supreme Court held that there was no reasonable manner in which the statute can be read to authorize the use of criteria other than those in the written civil service test, and that since merit is to be the sole criteria for promotion, according to the statute, the only way to ascertain merit is by a written test.

Both parties agree that the applicable statute in the present case is the Firemen's Civil Service Act of May 31, 1933, P. L. 1108, sec. 8, 53 PS §39868, which provides: ". . . Promotions shall be based upon merit, to be ascertained by tests to be provided by the civil service commission, and upon the superior qualifications of persons promoted, as shown by his previous service and experience."

This identical language was utilized by the legislature when enacting the Second Class County Code which was cited by the Supreme Court in Staisey as an example of a provision whereby the legislature explicitly established that factors other than the score on a written examination shall be used in determining merit. Also significant to the present case is the Supreme Court's comment that if the legislature intended merit to include nonwritten examination factors in second class cities, it could have said so with the language of the Second Class County Code. Hence, the Staisey decision plainly supports defendants' legal position, not that of plaintiffs as they contend, since the relevant language of the Second Class Cities Code is identical to that of the statute applicable to the present case.

Mr. Chief Justice Bell plainly believes the wisdom of the applicable statute to be superior to that of the Second Class County Code for when concurring with the majority decision in Staisey he stated:

"I agree with the majority opinion but I write this concurring opinion to call the attention of the Legislature to the wisdom of changing this unrealistic and stupid provision of the Act, namely, that promotions are to be based upon merit to be ascertained solely by a written examination."

John W. Gardner, who has made a study-in-depth of excellence in a democratic society and who has written extensively for the enlightenment of those interested in the subject, in his book, "Excellence— Can We Be Equal and Excellent Too?," on page 51 states as his final conclusion:

"By all odds the most important rule is that the test should not be the sole reliance in identifying talent. Judgments of youngsters' aptitudes and achievements should be based on many kinds of evidence. The tests are one kind of evidence. School grades are another kind. The teachers' written judgments of students represent another kind of evidence . . . The important thing to be borne in mind is that every known measure of aptitude and achievement has some failings. Only by drawing upon a considerable variety of evidence can we be certain that our judgment is well rounded and fair . . . A sorting out of individuals in a society is an exceedingly serious business and a potentially explosive one. No stones should be left unturned to insure that decisions are based on a wide range of evidence, carefully gathered and sifted . . ."

Today's society vociferously demands promotion of governmental employes be according to a merit system. But the difficulties inherent in promulgating such a system are many and varied as Mr. Gardner poignantly points out in his book, on page 52:

"Still another important rule is that crucial judgments on the . . . future should not be based entirely on intellectual gifts. We have pointed out

that traits of personality and character are of central importance in . . . later performance. And there are many kinds of socially, invaluable talent . . . which are not measured by the tests. All of these should carry due weight in any decisions which are made. This is so obvious that one might wonder why it needs to be mentioned, but the plain fact is that the easiest, laziest thing to do is to sort . . . out by their scholastic aptitude scores and forget the complications . . ."

The Legislature was plainly aware of such complications when enacting the Firemen's Civil Service Act for third class cities, for it provided in the statute that the promotion of firemen shall be based upon merit ascertained by tests, previous service and experience.

It is an accepted view in this State that no employe in the civil service may be appointed, transferred, reinstated, promoted or discharged in any manner or by any means other than those specified by the statutes regulating civil service: Commonwealth ex rel. Donahue v. Shields, 350 Pa. 129, 38 A. 2d 17 (1944); Truitt v. Philadelphia, 221 Pa. 331, 70 Atl. 757 (1908). Unlike the Civil Service Act for policemen of the Second Class County Code which was interpreted in the Staisey case, the provisions of the Firemen's Civil Service Act for third class cities does not require promotion of firemen to be according to their civil service test scores.

Furthermore, the decision not to fill a vacancy in the position of lieutenant is not subject to judicial review. It is not for the court to determine whether any fireman or firemen are to be promoted. Whether to fill vacancies in the position of lieutenant in the fire department is wholly within the discretion of the appointing authorities. Such a determination is

not judicial. What plaintiffs now seek is beyond the judicial power to grant: Bobick v. Fitzgerald, 416 Pa. 588, 207 A. 2d 878 (1965); Bradycamp v. T. Warren Metzger, 310 Pa. 320, 165 Atl. 387 (1933). The holding of McGrath v. Staisey, supra, is not contrary to this principle. That case merely held that under the Second Class County Code the promotion of a patrolman was illegal, since it was not according to the civil service test scores. But the court did not compel the appointment of the patrolman-plaintiff who was illegally passed over when the promotion was made.

In the light of the foregoing discussion and citations of authority, it is apparent that the complaint fails to state a cause of action under section 8 of the applicable Firemen's Civil Service Act, of May 31, 1933, P. L. 1108, 53 PS §39868, because: (1) the court of common pleas does not have jurisdiction to compel the appointing authorities to fill vacancies in the position of lieutenant of the City of New Castle Fire Department, and (2) the appointing authorities of a third class city are not required to promote firemen to the position of lieutenant according to their civil service test scores, and, therefore, the complaint fails to establish that plaintiffs have a specific, well-defined and complete legal right to a promotion to the position of lieutenant.

Hence, it is not necessary, in view of our holding, to reach the question of whether the appointing authorities wholly complied with all applicable laws relative to the promotion of a fireman, ranked seventeenth by the civil service board, to the position of lieutenant. Therefore, in this adjudication we have neither considered nor passed upon: (1) the procedures utilized by the civil service board in certifying all who took the written examination to the ap-

pointing authorities; (2) the legality of the discretion exercised by the appointing authorities in making the promotion to the position of lieutenant from the list submitted by the civil service board; and (3) the legality or applicability of the City of New Castle administrative code provisions relative to the promotion of firemen to the position of lieutenant.

Plaintiffs strongly contend that the beneficial purposes of the Civil Service Act are wholly defeated through application of the procedures utilized by the civil service board and appointing authorities which in actual practice permit the promotion of any person taking the examination, regardless of his civil service test score, where he was ranked among others taking the examination and his prior service and experience, and that, therefore, the only required qualifications for promotion are those which a person must have in order to take the civil service examination. Although there appears on the surface to be some substance to this contention, it cannot be considered or decided in this proceeding, since it is wholly collateral to the issue involved in the instant case. The issue here is whether plaintiffs have a legal right to compel their promotion to fill vacancies in the position of lieutenant. The question of whether another person may have been illegally promoted to that position is a wholly different issue and one that is completely irrelevant to this adjudication. Hence, resolution of that issue must await a case or controversy where the issue is properly brought before the court and ripe for decision. The pleadings in the present case do not present this issue as a justifiable controversy to which this court can address itself: Raezer v. Raezer, 428 Pa. 163, 236 A. 2d 513 (1968).

## ORDER

And now, July 23, 1970, defendants' preliminary objection in the nature of a demurrer is sustained.

Exception is sealed for plaintiffs.

