604 A.2d 1105

**Patricia R. YOUNG, Petitioner,**

v.

**INSURANCE DEPARTMENT, Respondent.**

**Michael SMEARMAN, Petitioner,**

v.

**INSURANCE DEPARTMENT, Respondent.**

**Kevin BUMBERGER, Petitioner,**

v.

**Constance B. FOSTER, Insurance Commissioner, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Oct. 10, 1991.

Decided Feb. 20, 1992.

Reargument Denied April 28, 1992.

David M. Landay, for petitioner Patricia R. Young.

Sharon M. ProFeta, for petitioner Michael Smearman.

Edwin P. Smith, for petitioner Kevin Bumberger.

Richard C. Angino, for amicus curiae Pennsylvania Trial Lawyers Ass'n.

Heidi B. Hamman Shakely, Deputy Chief Counsel, for respondent.

Before CRAIG, President Judge, DOYLE, J.(P.), and SILVESTRI, Senior Judge.

SILVESTRI, Senior Judge.

This consolidated appeal involves three Petitioners, Patricia R. Young, Kevin Bumberger and Michael Smearman, who collectively [1] petition for review of an adjudication and order [2] of the Insurance Commissioner which affirmed the Catastrophic Loss Benefits Continuation Fund's (CAT Fund) [3] denial of benefits to Petitioners.

After Petitioners' request for benefits was denied by Pennsylvania Insurance Management Company (PIMCO), administrator for the CAT Fund, a request for review of the decision was submitted to the Pennsylvania Insurance Department's Bureau of Consumer Services (Bureau). The Bureau affirmed PIMCO's denial of benefits. Petitioners then submitted a request for a formal administrative hear-

---

1. We granted a motion for consolidation of the three cases by order dated May 1, 1991.

2. The orders for Young, Bumberger and Smearman were dated January 28, March 1 and March 5, 1991, respectively.

3. The CAT Fund was created to provide funds necessary to pay catastrophic loss benefits and is composed of funds transferred from the Catastrophic Loss Trust Fund.

ing. Petitioners subsequently agreed to enter a Stipulation of Fact in each case in lieu of the formal administrative hearing. After briefs were submitted, the Insurance Commissioner affirmed the denial of CAT Fund benefits to Petitioners:

Common facts of all three Petitioners are as follows. All reside in Pennsylvania. All were involved in accidents occurring on or after June 1, 1989. Each incurred medical expenses in excess of $100,000. None were motor vehicle owners at the time of the accidents but all three resided with either a parent or grandparent who owned a motor vehicle for which the CAT Fund fee had been paid for the registration year during which Petitioners were involved in accidents.

Because disposition of the issues before us requires consideration of extant and repealed statutes, a brief history of the involved legislation is required. On October 1, 1984, contemporaneous with the repeal of the Pennsylvania No-fault Motor Vehicle Insurance Act,[4] the Motor Vehicle Financial Responsibility Law (Motor Vehicle Law)[5] became effective. The Motor Vehicle Law established the CAT Fund to compensate victims suffering a catastrophic loss resulting in medical expenses exceeding $100,000. The CAT Fund was funded by levying a charge on owners of motor vehicles required to be registered in Pennsylvania. To be eligible to receive CAT Fund benefits, a claimant had to be a resident of Pennsylvania whose injury arose out of the maintenance or use of a motor vehicle. Owners of motor vehicles who failed to comply with registration requirements, including non-payment of the CAT Fund fee, were ineligible for benefits.[6] The CAT Fund was terminated on December 12, 1988.

---

4. Act of July 19, 1974, P.L. 489.

5. Act of February 12, 1984, P.L. 26, 75 Pa.C.S. §§ 1701–1705.

6. Ineligible persons also included individuals who were injured either as occupants or operators of vehicles which were not subject to the CAT Fund fee, such as motorcycles. 75 Pa.C.S. §§ 1306(7), 1761, 1763 (repealed).

Thereafter, on April 26, 1989, the Legislature enacted an act (hereinafter "Act 4") which provided for a new type of optional catastrophic loss coverage known as extraordinary medical benefit (EMB) coverage, to replace CAT Fund coverage. Act 4 also provided for transition between termination of CAT Fund coverage on December 12, 1988 and commencement of the new EMB coverage on June 1, 1989. The so-called savings provision, 75 Pa.C.S. § 1798.2(a), enacted by the Legislature, provides as follows:

§ 1798.2. Transition

(a) Savings provision.—Notwithstanding the repeal of Subchapter F (relating to Catastrophic Loss Trust Fund) by the Act of December 12, 1988 ... all natural persons who suffer or suffered a catastrophic loss prior to June 1, 1989, or who may suffer a catastrophic loss during the registration year for which payment was made in accordance with former section 1762 (relating to funding), respectively, shall continue to receive, or be eligible to receive, catastrophic loss benefits as if Subchapter F had not been repealed.... (Citation omitted.)

This section was retroactive to December 12, 1988 and was intended to recognize there would be motor vehicle owners who paid a CAT Fund fee for a registration year which extended beyond June 1, 1989.

It is the interpretation of the savings provision regarding catastrophic losses after June 1, 1989 that is the issue presently before us for consideration. Petitioners contend the Insurance Commissioner has misconstrued the applicable law in reaching the conclusion that only owners of motor vehicles who paid CAT Fund fees and the registration fee for the year expiring subsequent to June 1, 1989, and not the public at large, are eligible for catastrophic loss benefits. Petitioners now request this Court to reverse the determination of the Insurance Commissioner.

■ Petitioners argue that, as a matter of interpretation, anyone who is a resident of the household and a relative of the owner of a motor vehicle who paid the CAT Fund fee is

eligible for benefits subsequent to June 1, 1989.[7] Petitioners maintain that the savings provision did not purport, nor did the legislature intend, to limit benefits only to owners of motor vehicles thereby excluding the general category of coverage for Pennsylvania residents, as found by the Insurance Commissioner. Petitioners insist that the Motor Vehicle Law did not limit eligibility to cases where the motor vehicle involved in the accident was registered in Pennsylvania. Since no such change was mandated by Act 4, Petitioners contend that the Insurance Department's interpretation, adopted by the Insurance Commissioner, is an invalid limitation and is beyond the authority of the Insurance Commissioner.

Upon review and due consideration of the position of the parties and statutory provisions, we are of the opinion that acceptance of Petitioners' position that all household members or relatives of any motor vehicle owner who paid the CAT Fund fee are entitled to benefits for accidents occurring subsequent to June 1, 1989, would be illogical and would ignore legislative intent of limiting eligibility and transferring coverage to optional programs with private insurers.

■ We reach this conclusion after interpretation of the savings provision as aided by the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921. Under Section 1921(a) of the Statutory Construction Act, the object of an interpretation of a statute is to ascertain and effectuate the intention of the General Assembly and to give effect to all of the provisions contained therein. When the statute does not readily express that intent, we may ascertain the intention of the General Assembly by considering:

(1) The occasion and necessity for the statute.

(2) The circumstances under which it was enacted.

(3) The mischief to be remedied.

(4) The object to be attained.

7. The accidents that Petitioners Young, Bumberger and Smearman were injured in occurred on June 17, June 1, and June 8, 1989, respectively.

(5) The former law, if any, including other statutes upon the same or similar subjects.

(6) The consequences of a particular interpretation.

(7) The contemporaneous legislative history.

(8) Legislative and administrative interpretations of such statute.

1 Pa.C.S. § 1921(c).

In reaching our conclusion, we reviewed the legislative policy reasons [8] underlying enactment of the savings provision as was done by the Supreme Court in *Commonwealth v. DePasquale*, 509 Pa. 183, 501 A.2d 626 (1985). In consort with the Statutory Construction Act, especially considering the occasion and necessity, circumstances, object and consequences of enactment of the savings provision, it is clear that the CAT Fund was severely unfunded and actuarily unsound, termination was necessary, and eligibility for benefits needed to be restricted.

Under the savings provision, Pennsylvania residents who suffered catastrophic losses prior to June 1, 1989 were eligible for benefits as if the CAT Fund had not been repealed. In contrasting the language of that provision with the language restricting eligibility after June 1, 1989 to "those natural persons ... who may suffer a catastrophic loss during the registration year for which payment was made in accordance with (paying the CAT Fund fee)" it is clear that a limitation on eligibility was intended by the Legislature. As found by the Insurance Commissioner, a contrary conclusion "appears inconsistent with the Legislature's attempt to move the bulk of the catastrophic loss coverage into the private sector on June 1, 1989 and to cut

---

**8.** Unlike determining intent from legislative remarks which the Supreme Court indicated we cannot do in *Commonwealth v. Alcoa Properties, Inc.*, 440 Pa. 42, 269 A.2d 748 (1970) and *McCormick v. Columbus Conveyer Co.*, 522 Pa. 520, 564 A.2d 907 (1989), we reviewed legislative policy reasons as expressed in House and Senate journals to aid in construing the savings provision. *See* Legislative Journal–House, April 25, 1989, pp. 682–685; Legislative Journal–Senate, March 15, 1988, pp. 1896–1904.

off additional unfunded liabilities." See Young Adjudication at page 13.

■ Petitioners additionally argue entitlement to CAT Fund benefits because CAT Fund eligibility is based on the same criteria as eligibility for first party benefits under an automobile insurance policy. Petitioners again maintain that any family member residing in the same household as a motor vehicle owner who has paid the CAT Fund fee is entitled to catastrophic benefits in the event of an accident. However, the inquiry into who is a member of an insured's household is relevant only when ascertaining eligibility for first party benefit coverage and is inapplicable here. Under the former CAT Fund Section of the Motor Vehicle Law, all Pennsylvania residents were generally eligible for benefits regardless of household affiliation. Under the definition of "eligible claimant", previously at 75 Pa.C.S. § 1761, children and household members were eligible for benefits because they were residents of Pennsylvania; eligibility was not dependent upon whether the head of the household or any other household member owned a motor vehicle or paid the requisite CAT Fund fee. Thus, Petitioners' assertion is unfounded.

■ Finally, Petitioner Smearman contends the Insurance Commissioner's interpretation limiting CAT Fund coverage for accidents after June 1, 1989 to vehicle owners who paid CAT Fund fees for the applicable registration year violates his constitutional rights. However, because the CAT Fund did not establish a right to coverage based upon household residency with a vehicle owner or family relationship, no commensurate right is taken away from any such person by enactment of the savings provision and repeal of CAT Fund coverage.[9]

9. Our consideration includes consideration of Smearman's argument that he was "treated differently" from other injured persons, that denial of benefits is fundamentally unfair, and that he had no notice of ineligibility.

Accordingly, we affirm the decision of the Insurance Commissioner finding Petitioners ineligible for CAT Fund benefits.

## ORDER

AND NOW, this 20th day of February, 1992, the orders of the Insurance Commissioner of the Commonwealth of Pennsylvania are affirmed.